## Case No. 4,103.

### The D. S. GREGORY.

[16 Blatchf. 542; 8 Reporter, 487; 27 Pittsb. Leg. J. 40.] [1]

Circuit Court, S. D. New York. July 31, 1879.[2]

#### COLLISION—FERRY-BOATS—FOG.

1. In this case, two steam ferry-boats collided in a fog. The one which had the other on her port hand was held solely in fault, she having kept on while the other had come to a stand still, each having heard the blasts of the steam whistle from the other.

2. The responsibility of keeping out of the way in a fog is upon both of two approaching steam vessels.

[Appeal from the district court of the United States for the southern district of New York.]

This was a libel in rem, filed in the district court, in admiralty. That court decreed for the libellant [Case No. 4,101], and the claimant appealed to this court.

The following facts were found by this court: "About seven o'clock in the morning of January 3d, 1873, a collision occurred, near the middle of the Hudson river, opposite New York, between the steam ferry-boat Pavonia, owned by the libellant, and the steam ferry-boat D. S. Gregory. The river is about one mile wide at this point. An unusually dense fog prevailed at the time. There was no wind. The tide was the first of

the ebb. Both vessels were side-wheel steamers, employed on ferries across the Hudson river between New York and New Jersey, and well known to each other. The Pavonia connected with the Erie Railroad, and the D. S. Gregory with the Pennsylvania Railroad. The Pavonia was on one of her regular trips from the foot of Chambers street, New York, to her slip in Pavonia, on the New Jersey side, and the D. S. Gregory was on one of her regular trips between Desbrosses street, New York, and Montgomery street, Jersey City. As Desbrosses street was higher up the river than Chambers street, and Pavonia higher up than Montgomery street, Jersey City, the courses of the two boats crossed each other. The regular course of the Pavonia, after leaving her slip, was about north-west, and that of the D. S. Gregory south-west, or, south-west by west. This brought the point of crossing near the middle of the river. The full speed of the Pavonia was about twelve miles an hour, and that of the D. S. Gregory scant eleven. Both boats were in charge of experienced and competent pilots, and had their lights properly set and burning. The D. S. Gregory had two lookouts performing their duty, and both standing on the upper deck, one on each side of the pilot house. The Pavonia had one lookout on the upper deck, performing his duty and standing near the pilot house. Another lookout was on the deck below. The Pavonia started out of her slip at full speed, but, as soon as she got outside, slowed down to half speed and headed on her regular compass course. She sounded her fog whistle at proper intervals. Soon after she got out, she heard a whistle off her starboard hand, which she recognized as that of the D. S. Gregory, or one of the other Desbrosses street boats. After this she kept on for a little time at half speed, but, as the sound from the whistle of the D. S. Gregory came nearer, concluded to stop and let that boat go by ahead. Accordingly, her bell was rung to stop, and the order was promptly obeyed. She still continued to blow her fog whistles, but, after her engine had been stopped a little time, hearing the noise of the wheels of the D. S. Gregory from a direction which indicated danger of collision, she sounded the alarm whistle and rang her bell to back. Almost immediately afterwards the D. S. Gregory appeared through the fog and ran into her on the starboard side, just forward of the starboard wheel. The bell was rung to back and the alarm whistle sounded before the D. S. Gregory, or her lights, came in sight. The forward part of the Gregory passed under the guards of the Pavonia and knocked a large hole in her side. The wheels of the Pavonia made four turns back before the boats came together, but she had not acquired much, if any, backward motion. The D. S. Gregory, when she left her slip, slowed down to half speed and took her regular course by compass for her New Jersey landing. She sounded her own fog

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 27 Pittsb. Leg. J. 40, and 8 Reporter, 487, contain only condensed reports.]

[2] [Affirming Case No. 4,101.]

whistles, and heard those from the Pavonia, and recognized them as coming from a boat passing from New York to Pavonia, on that ferry. She kept her course at half speed, however, until she saw the Pavonia looming up before her out of the fog, when she rang her bells to stop and back, but, before her headway was materially affected, the collision took place. Both the Pavonia and the D. S. Gregory were respectively in places, on their courses, where they might properly have been looked for if there had been no fog. The damage done to the Pavonia by the collision amounted to $3,812.54, at the date of the decree below."

William D. Shipman, for libellant.

Welcome R. Beebe, for claimant.

WAITE, Circuit Justice. While I cannot say I am as certain as the district judge seems to have been that the Pavonia was entirely free from fault, I have, on the whole, come to the conclusion that the preponderance of testimony is that way. My doubt has been as to whether she did not keep on at half speed too long, but it is clearly proven that she did stop her engine some time before the Gregory appeared in sight, and that she rang her bell to back as soon as the sound of approaching wheels indicated special danger. She did with the simple stoppage of her engine, come almost, if not quite, to a stand still, before the point was reached on which the courses crossed. This showed caution and special attention to moderate speed. Had the Gregory done as much, it is almost certain that a damaging collision could not have occurred. Instead of that, she seems to have assumed, that, because the Pavonia was on her port hand, she had the right of way, and might keep her course and speed with impunity. In this, I think, she was in fault.

It is true, the statutory sailing rules provide, that, "if two vessels under steam are crossing so as to involve risk of collision, the vessel which has the other on her own starboard side, shall keep out of the way of the other" (Rev. St. § 4233, rule 19), and that, in such case, "the other shall keep her course" (rule 23), having regard "to any special circumstances which may exist in any particular case, rendering a departure * * * necessary, in order to avoid immediate danger" (rule 24). This evidently has reference specially to cases where the vessels can be seen from each other and their movements directed accordingly; and so the supervising inspectors must have understood, when, under the authority (sections 23, 29) of the act of February 28, 1871 (16 Stat. 449, 450, now Rev. St. §§ 4405, 4412), they adopted their rule 4, which is as follows: "When steamers are running in a fog or thick weather, it shall be the duty of the pilot to cause a long blast of the steam whistle to be sounded, at intervals not exceeding one minute, and no steamer shall, in any case. be justified in coming in collision with another vessel if it be possible to avoid it." To this must be added statutory rule 21, which provides, that "every steam vessel, when approaching another vessel, so as to involve risk of collision, shall slacken her speed, or. if necessary, stop and reverse; and every steam vessel shall, when in a fog, go at a moderate speed;" and, taking it all together, it seems to me clear, that the responsibility of keeping out of the way in a fog is thrown upon both of two approaching steam vessels. The reason is obvious. In the midst of a fog, sound takes the place of sight, as the means of ascertaining the position of approaching vessels; and as, for such purposes, sound is more uncertain than sight, the greatest caution is required on all sides. Hence it has been established, that, under such circumstances, steamers shall take no risks. They are not to be justified in colliding with any other vessel in a fog. Having complete control over their own movements, they can, if they will, come to an understanding as to the manner in which they shall pass each other, before any serious collision can occur. It may cause some inconvenience to those who are in haste, but it will be more likely to ensure safety.

Here, each boat knew of the close proximity of the other, and their well-understood crossing courses made a collision possible. Each heard and recognized the signals of the other. It was easy to communicate by signals that experienced pilots would readily interpret. By moving slowly and cautiously, there was no great difficulty in feeling their way, until there was a perfect understanding as to what each should do. All it needed was to act in accordance with the spirit of rule 3 of the supervising inspectors, framed for another purpose, and "both slow to a speed barely sufficient for steerage way until the proper signals had been given, answered and understood." This the Pavonia attempted to do when she stopped and finally backed her engine. So as not to run any risk of being confused as to her bearings, she kept her course while she held on to let the Gregory by. If she could have seen, she might have steered out of the way. In the fog, however, it was clearly easier to retain the knowledge of where she was by holding on, rather than changing, her course. Had the Gregory been equally cautious and watchful, I cannot but think no damage would have been done.

The "rule of the road," to "keep to the right," always yields to a contrary agreement between the parties. Sometimes, safety requires that this agreement should be made before dangerous proximity is reached. The rule contemplates certainty as to position and movements. If there is doubt, an attempt should always be made to arrive at a mutual understanding of what is to be done. Especially should this be the case when vessels are navigating a crowded harbor in a fog.

The Pavonia was not "laying by" or "drifting," within the meaning of those terms in rule 10 of the supervising inspectors, and, consequently, she was not required to use the special signals contemplated by that rule. She was simply holding on to let the Gregory go by, and, therefore, only bound to give the usual fog signals to indicate her locality.

The damages below, as agreed upon, included interest to the date of the decree. The libellant is entitled to recover, in this court, the amount allowed below, with interest, from the date of that decree, on the actual amount of damages as stipulated, not including any interest as calculated below. An entry may be prepared accordingly.